POST PRINTING & PUBLISHING CO. v. BREWSTER, Attorney General of Kansas, et al.

(District Court, D. Kansas, First Division.   December 8, 1917.)

No. 209–N.

1. INJUNCTION ⊂⇒85(1)—RELIEF—SCOPE.

State officials cannot be restrained and enjoined from attempting to enforce an act prohibiting the sale and advertisement of cigarettes, if valid, merely on the ground its prohibitive provisions did not apply to a particular newspaper company or its employés printing or publishing such advertisement, for there would be abundant opportunity to establish that fact in defense of a criminal prosecution.

2. COMMERCE ⊂⇒16—"INTERSTATE COMMERCE"—WHAT CONSTITUTES.

As "interstate commerce" is not only traffic, but is intercourse, the publication of a newspaper and its distribution from one state to another is interstate commerce.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. COMMERCE ⊂⇒40(1)—INTERSTATE COMMERCE—BURDEN ON.

The sale of cigarettes in a foreign state to a citizen of Kansas, in which state the sale of such articles was prohibited by Laws Kan. 1917, c. 166, and their carriage from such foreign state into the state of Kansas and delivery in the original packages, is an interstate commerce transaction, which it is beyond the power of the state of Kansas to prohibit or unduly restrict or burden; Congress having exclusive control of interstate commerce.

4. COMMERCE ⊂⇒16—INJUNCTION ⊂⇒85(2)—INTERSTATE COMMERCE—BURDEN ON.

Laws Kan. 1917, c. 166, § 1, declares it shall be unlawful for any person, company, or corporation to barter, sell, or give away any cigarettes or cigarette papers, while section 2 declares that it shall be unlawful for any person, company, or corporation to advertise cigarettes or cigarette papers. Plaintiff, a Missouri corporation, engaged in the business of printing a newspaper in the state of Missouri, sold and distributed its newspaper throughout the state of Kansas, delivering the same by means of the postal service, express companies, and other carriers. The sale

of cigarettes was authorized in the state of Missouri, and Congress has placed no restrictions on interstate commerce in cigarettes. *Held* that, as the state of Kansas could not prohibit or unduly burden interstate commerce in cigarettes, it could not burden or unduly limit interstate commerce in newspaper advertising, for that would indirectly affect interstate commerce in the articles; and hence the statute, in so far as it was leveled against the advertisement of cigarettes in a newspaper distributed in interstate commerce, was unenforceable, and its enforcement by state officials may be enjoined.

In Equity. Suit by the Post Printing & Publishing Company against S. M. Brewster, Attorney General of the State of Kansas, and others. On motion to dismiss for want of equity. Motion denied, with leave to defendants to answer.

Frank M. Lowe, of Chicago, Ill., for plaintiff.

S. M. Brewster, S. N. Hawkes, and J. L. Hunt, all of Topeka, Kan., for defendant.

POLLOCK, District Judge. Plaintiff, a Missouri corporation, engaged in the business of printing and publishing a newspaper in the city of Kansas City, state of Missouri, brings this suit to restrain defendants, as officers of the state of Kansas, from enforcing against it, its agents, servants, and employés, the provisions of section 2, chapter 166, Laws of Kansas 1917, which reads as follows:

"It shall be unlawful for any person, company or corporation to advertise cigarettes or cigarette papers, or any disguise or subterfuge of either of these, in any circular, newspaper or other periodical published, offered for sale or for free distribution within the state of Kansas. It shall also be unlawful for any person, company or corporation to advertise cigarettes or cigarette papers on any street sign, placard or bill board, or in any package of merchandise, store window, show case, or any other public place within the state of Kansas."

The allegations of the petition concerning the threatened acts of defendants sought by plaintiff to be restrained in this suit are, in substance and so far as here material, as follows: Plaintiff is the owner and publisher of said the Kansas City Post; is engaged in the business of receiving for hire advertisements to be published in its said newspaper. Among such advertisements it has for a long time had, and now has, contracts made with manufacturers of cigars and cigarettes, by which contracts this plaintiff is bound to publish in the various editions of its newspaper advertisements about and concerning cigars and cigarettes. That said contracts for such cigarette advertisements now in force amount to more than $40,000 per year. That plaintiff has in the state of Kansas many thousand subscribers for its daily newspaper, the Kansas City Post, and that said newspaper is delivered by it to its various subscribers and readers in the state of Kansas by means of the United States postal service, railway express companies, and by carriers, who, as agents of plaintiff, deliver it to the various homes of said newspaper subscribers in the cities and towns of Kansas, and that said newspaper is also sold by newsboys or agents of plaintiff on the streets of the cities in the state

of Kansas and by news dealers who are agents of plaintiff, various hotels, drug stores, and other places of business in the cities of Kansas, and by newsboys on railway trains in the state of Kansas, who are agents of plaintiff; and your petitioner respectfully contends that under the law it has a right to do so. That defendant Hon. S. M. Brewster, as Attorney General of the state of Kansas, has advised, notified, and warned the plaintiff herein that he will, through the power vested by the laws of Kansas in his office as Attorney General, cause the arrest of all persons anywhere found in the state of Kansas selling or distributing said the Kansas City Post, if said newspaper so sold or distributed contains a cigarette advertisement, etc.

A restraining order was granted plaintiff on the filing of its petition, which defendants now move to vacate and to end this suit by a motion to dismiss for want of equity, which motion now stands submitted for decision on briefs filed and arguments presented.

If I read aright, the contentions of plaintiff, as made by and under its second amended petition, against which the motion of defendants to dismiss is leveled, are these: (1) That the legislative act quoted above was leveled by the law-making power, not against the printers and publishers of newspapers, but against those who sought to advertise the business of vending, giving away, or disposing of cigarettes through the medium of newspaper advertisements, or in other manner, in this state; hence, the threatened acts of defendants as alleged, if done against plaintiff and its business as a newspaper, should be enjoined. (2) If a contrary view of the true construction of the act be taken, the plaintiff is not and never has engaged in the business of printing or publishing a newspaper within this state; hence, in so far as such printing and publishing of its papers in a foreign state is concerned, it is quite beyond the jurisdiction and power of the state to prohibit or punish the advertisement of cigarettes therein. However, as it does, through the medium of interstate commerce channels, cause its printed newspapers to be carried into this state and to be here delivered to its customers through the medium of its agents and servants so engaged, the attempted and threatened enforcement of said act against such interstate commerce business by the officials of the state is an unwarranted interference with plaintiff's rights under the commerce clause of the national Constitution, and, so considered, the act is unconstitutional and void.

On the contrary, it is the insistence of defendants: (1) The act is directed as well against any person or corporation engaged in the business of printing, editing, or publishing a newspaper containing cigarette advertisements as it is against the business of any one engaged in selling, distributing, or otherwise disposing of cigarettes within the territorial boundaries of this state. (2) That the business of the plaintiff, as alleged in its petition, of carrying its publications into this state from the state of Missouri and here disposing of the same in the manner alleged, is not interstate commerce of such nature as to be beyond the power of the state to prohibit and punish, if said publications contain any advertisement of cigarettes, contrary to and in violation of said act.

Coming now to a consideration of the act itself, in order to determine therefrom the purpose and intent of the law-making power, it may be said: The title of the act is found to read as follows:

"An act to prohibit barter, sale, giving away, or advertisement of cigarettes or cigarette papers, or any disguise or subterfuge of either of these, and to prohibit the sale or giving away to minors of cigars, cigarettes, cigarette papers, tobacco or tobacco materials of any form, and repealing sections 3805, 3806, and 3807 of the General Statutes of Kansas of 1915."

Section 1 of the act reads as follows:

"It shall be unlawful for any person, company or corporation to barter, sell or give away any cigarettes or cigarette papers, or any disguise or subterfuge of either of these, or to have any cigarettes or cigarette papers in or about any store or other place for barter, sale or free distribution. If, upon what seems to be reasonable evidence any person, company or corporation is suspected of having in his or its possession any cigarettes or cigarette papers intended to be offered for barter, sale or free distribution, then, upon the sworn complaint of any citizen of the state of Kansas, specifying fully as to the alleged facts in the case, any officer authorized to make arrests may search the premises of such person, company or corporation and may confiscate any cigarettes or cigarette papers so found. The possession of such cigarette materials shall be considered prima facie evidence of a direct violation of this act."

From which it appears to have been the obvious legislative intent to prohibit absolutely and forever the barter, sale, gift, or other disposition of cigarettes in any form or manner whatsoever within this state. To accomplish this so-called beneficial result the law-making power thought it proper and necessary to prohibit and punish any one who within the state should by any writing, sign, or other means advertise the sale, gift, or other disposition of the nefarious article, lest the citizen, learning the source from which the same might be procured from without the state, should be tempted to so procure it, bring it into the state, and use it to his hurt.

[1] It is quite probable this well-meant, even if misguided, legislation is within the constitutional power of the state in the exercise of its reserve police powers; and, further, if this view of the act be not sound, and the act of printing or publishing a newspaper containing the unlawful and prohibited advertisement of cigarettes is not within the meaning and intent of the act, as is by the plaintiff contended, then I agree with the contention of defendants that they may not be restrained and enjoined from attempting the enforcement of a valid law merely on the ground its prohibitive provisions do not include the plaintiff and its employés, for, in such event, there is abundant time and ample opportunity to establish this fact in defense of the criminal prosecution. Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216; Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535; Davis Mfg. Co. v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778; Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283.

[2] Coming now to the question: Is the business of plaintiff in carrying its newspapers into this state and here delivering them to its patrons, as alleged in its petition, interstate commerce? If so, and such publications contain cigarette advertisements, in violation of the

act, may the state within its constitutional bounds prohibit or punish the plaintiff, its agents, servants, and employés, for conducting or engaging in said interstate business? That the business of printing and publishing a newspaper such as that printed and published by the plaintiff in this case in the state of Missouri, and causing the copies thereof to be carried into this state and here delivered to subscribers and customers of the plaintiff through its agents and representatives, as alleged in the petition herein, constitutes the doing of interstate commerce business, cannot to my mind be disputed. In the great case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, Chief Justice Marshall said:

"Commerce, undoubtedly, is traffic; but it is something more—it is intercourse."

In W. U. Telegraph Co. v. Pendleton, 122 U. S. 347, 7 Sup. Ct. 1126, 30 L. Ed. 1187, Mr. Justice Field, delivering the opinion of the court, said:

"Other commerce deals only with persons, or with visible and tangible things. But the telegraph transports nothing visible and tangible; it carries only ideas, wishes, orders, and intelligence."

In International T. Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103, Mr. Justice Harlan, delivering the opinion for the court, said:

"It is true that the business in which the International Text-Book Company is engaged is of a somewhat exceptional character, but, in our judgment, it was, in its essential characteristics, commerce among the states within the meaning of the Constitution of the United States. It involved, as already suggested, regular and practically continuous intercourse between the Text-Book Company, located in Pennsylvania, and its scholars and agents in Kansas and other states. That intercourse was conducted by means of correspondence through the mails with such agents and scholars. While this mode of imparting and acquiring an education may not be such as is commonly adopted in this country, it is a lawful mode to accomplish the valuable purpose the parties have in view. * * * Intercourse of that kind, between parties in different states, particularly when it is in execution of a valid contract between them, is as much intercourse, in the constitutional sense, as intercourse by means of the telegraph—'a new species of commerce,' to use the words of this court in Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1 [24 L. Ed. 708]."

In Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167, Judge Sanborn, delivering the opinion for the court, says:

"All interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce."

In Preston v. Finley (C. C.) 72 Fed. 850, it was expressly held:

"Newspapers are subjects of commerce, within the meaning of the provision in the Constitution of the United States relating to commerce between the states."

See, also, Welton v. State of Missouri, 91 U. S. 280, 23 L. Ed. 347; County of Mobile v. Kimball, 102 U. S. 702, 26 L. Ed. 238; McCall v. California, 136 U. S. 104, 10 Sup. Ct. 881, 34 L. Ed. 391; and the many other cases on this subject.

[3, 4] The sale of cigarettes in the state of Missouri, where the newspapers of plaintiff are published, is a lawful business, and the transmission by plaintiff of the intelligence where and on what terms cigarettes may be purchased by its subscribers, by way of advertisements inserted in such newspaper, is perfectly legitimate and proper. Further, it must be regarded as settled the sale of cigarettes in a foreign state to a citizen of this state, and their carriage from said foreign state into this state and here delivered in original packages in consummation of such sale made in a foreign state, is legitimate interstate commerce, which is beyond the power of the Legislature of this state to prohibit or unduly restrict or burden. Austin v. Tenn., 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224; State v. Lowry, 166 Ind. 372, 77 N. E. 728, 4 L. R. A. (N. S.) 528, 9 Ann. Cas. 350. In other words, while the business of bartering, selling, or in any other manner disposing of cigarettes in this state, or the business of advertising in any manner by any one within this state of the business of selling or disposing of cigarettes, is by the act in question properly prohibited, yet by reason of the exclusive control of Congress over interstate commerce it must, I think, be held, as the conduct of interstate commerce in cigarettes may not by a state be prohibited or unreasonably burdened, it follows, of necessity, the business of advertising such interstate commerce business, which advertising itself not only is a form of interstate commerce, but further adheres in the very conduct of the interstate cigarette business itself, is also beyond the power of the state to prohibit or make criminal and punish, and this for the reason it cannot be thought possible to make the advertisement of a lawful business unlawful and punishable as a crime. Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649; In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572.

In State v. Bass Pub. Co., 104 Me. 288, 71 Atl. 894, 20 L. R. A. (N. S.) 495, the Supreme Court of Maine held:

"The defendants further urge that newspapers and magazines published in other states and containing advertisements of intoxicating liquors for sale come into this state by mail and otherwise in large quantities, and yet cannot be interfered with by the state authorities. That may be; but it does not follow that the state may not prevent such advertisements being printed in newspapers published in this state. If this state cannot wholly prevent the mischief of such advertisements by excluding from the state all newspapers containing them wherever published, it may yet prevent such increase and spread of the mischief as would result from such advertisements being printed in newspapers published within the state. It may to that extent control the conduct of printers and publishers within its own territory. Such we understand to be the logical result of the decision and reasoning in the Delamater Case by the court of last resort upon such questions."

This case, it would seem, draws the true distinction between a publication containing the prohibited advertisements printed in this state and without. However, it is earnestly insisted by defendants the case

of Delamater v. South Dakota, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733, is controlling here. I am of a contrary opinion. A study of that case will disclose the fact it is predicated upon the principle that intoxicating liquors, by reason of their very inherent nature and the results which flow from their use, had theretofore by the Congress in the Wilson Act (26 Stat. 313 [Comp. St. 1916, § 8738]) been withdrawn from that protection against state interference universally accorded to interstate commerce in other commodities; whereas, such discrimination against cigarettes or tobacco in any form carried in interstate commerce has not as yet been made by the Congress. This fact, to my mind, distinguishes the Delamater Case and the case of State ex rel. Black v. Delaye, 193 Ala. 500, 68 South. 993, L. R. A. 1915E, 640, from the present case.

It follows the motion to dismiss for want of equity must be overruled and denied, with leave to defendants to answer the second amended bill filed in this case within 30 days, if so advised by their solicitors. It is so ordered.