## STATE v. PACKER CORPORATION.

No. 5036. Decided April 7, 1931. (297 P. 1013.)

502

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for the State.

*Dan B. Shields, of Salt Lake City, and W. H. Reeder, Jr.,* of Ogden, for respondent.

FOLLAND, J.

This is a prosecution by the state, commenced in the city court of Salt Lake City. The complaint charged the defendant with committing the crime of violating section 2, c. 145, Laws Utah 1921, as amended by chapter 52, Laws Utah 1923, and as amended by chapter 92, Laws Utah 1929, as follows:

"That the said Packer Corporation, at said time and place did display on a bill board owned and operated by the defendant, an advertisement of Chesterfield Cigarettes by displaying a representation of

a package of Chesterfield Cigarettes with the words, 'Chesterfield Cigarettes, They Satisfy.' contrary to the provisions of the Statute," etc.

The defendant interposed general and special demurrers on the grounds, among others, that the facts stated in the complaint did not constitute a public offense, and that the statute upon which the complaint is based violates the provisions of article 1, § 1, of the Constitution of Utah, with respect to the inherent and inalienable right of defendant to acquire, possess, and protect its property, of article 1, § 7, with respect to deprivation of property without due process of law, of article 1, § 18, with respect to impairing the obligation of contracts, of article 1, § 24, relating to uniform operation of all laws of a general nature, and as being in conflict with article 1, § 8, of the Constitution of the United States, relating to interstate commerce, with article 1, § 10, respecting impairing of the obligations of contracts, with article 4, § 2, respecting the privileges and immunities of citizens in the several states, and the Fourteenth Amendment of the Constitution of the United States respecting the deprivation of property without due process of law, and/or respecting the denial to persons within the jurisdiction of the state of Utah of the equal protection of the laws.

In the city court the defendant was found guilty, but, upon appeal to the district court, the demurrer was sustained, and, the state refusing to amend, the action was dismissed. The state appeals.

The validity of the act is defended by the state upon the ground that it is a proper and legitimate exercise of the police power of the state, and that the act in no particular offends against any of the constitutional provisions of the state or of the United States.

The provision with respect to advertising cigarettes and tobacco on billboards is section 2, of chapter 52, Laws Utah 1923, as amended by chapter 68, Laws Utah 1925, and by chapter 92, Laws Utah 1929 (further amended by chapter

5, Laws Utah 1930 [Sp. Sess.], after this action was commenced, but which does not change the situation as to the particular question involved), which section is as follows:

"It shall be a misdemeanor for any person, company, or corporation, to display on any bill board, street car sign, street car, placard, or on any other object or place of display, any advertisement of cigarettes, cigarette papers, cigars, chewing tobacco, or smoking tobacco, or any disguise or substitute of either, except that a dealer in cigarettes, cigarette papers, tobacco, or cigars or their substitutes, may have a sign on the front of his place of business stating that he is a dealer in such articles, provided that nothing herein shall be construed to prohibit the advertising of cigarettes, cigarette papers, chewing tobacco, smoking tobacco, or any disguise or substitute of either in any newspaper, magazine or periodical printed or circulating in the State of Utah."

The act of which this advertising feature is a part is for the regulation and restriction of the sale, use, and advertising of cigarettes and tobaccos, and includes the following:

(1) The licensing of cigarette dealers by cities, towns, and counties upon payment of a license fee.

(2) The imposition of a tax to be paid to the state upon all packages of cigarettes sold.

(3) Prohibiting the advertising of cigarettes and tobaccos on bill boards, placards, and in street cars.

(4) Prohibiting the sale or furnishing of cigarettes or tobaccos to minors under 21 years of age.

(5) Making it unlawful for proprietors of places of business to knowingly permit minors under 21 years of age to frequent such places while using tobacco in any form.

(6) Vesting power in the licensing authority to revoke the license of any dealer for violation of the act; no new license to be granted such dealer within two years after such revocation.

(7) Regulations with respect to the tax feature, looking to the collection of the stamp tax.

It is apparent from the act itself, as well as from the history of the legislation on the subject, that the purpose of the act was to regulate and restrict the sale and use of cigarettes and tobacco. In chapter 145, Laws Utah 1921, p. 390, the

Legislature prohibited the sale of cigarettes and cigarette papers within the state and also prohibited smoking of tobacco in public places and the advertising of tobacco in any form. Because of the widespread use of cigarettes, the law was unpopular and difficult, if not impossible, of enforcement. The Legislature in 1923 repealed all but one section of the 1921 law, and enacted substantially the present law. It is evident the intent of the Legislature was a relaxation merely, and not an abandonment of its policy of restriction. As an incident and as a more efficient means of regulation, the act requires payment, of a license fee by dealers, and the payment of an excise tax on cigarettes. The fact that a considerable revenue is raised and paid into the public treasury does not itself indicate that the act was passed as a revenue measure, nor destroy its character as a regulatory act passed in the exercise of the police power, where the object is to control, regulate, and restrict, rather than to encourage, the traffic. 15 R. C. L. 288; 26 R. C. L. 17; *Town of Phoebus* v. *Manhattan Social Club,* 105 Va. 144, 52 S. E. 839. That the act is regulatory in its nature and purpose is shown by the fact that, in addition to the imposition of the stamp tax, it requires a license and payment of a license fee, prohibits sales to minors under 21, and smoking by minors in stores, shops, and other places, restricts the advertising of cigarettes and tobaccos, and grants power to the licensing power to revoke or refuse licenses in the event of violation of any of the provisions of the act.

A police regulation presupposes a condition which, unless restricted, guarded, and controlled, will operate to public disadvantage. The courts have held, without exception, that the state, in the exercise of the police power, may license, tax, and regulate the sale and use of cigarettes and tobacco and may go so far as to prohibit the traffic entirely.

In *Gundling* v. *Chicago,* 176 Ill. 340, 52 N. E. 44, 48 L. R. A. 230, it was held that an ordinance regulating the sale of tobacco in one of its forms, i. e., cigarettes, was a

health and welfare measure within the exercise of the police power. This case was affirmed on appeal to the United States Supreme Court in 177 U. S. 183, 20 S. Ct. 633, 636, 44 L. Ed. 725, wherein it was said:

"The amount of the fee is fixed by the common council for the privilege of doing business, and the text of the ordinance and the amount of the fee therein named would seem to indicate that it is both a means adopted for the easier regulation of the business and a tax in the nature of an excise imposed upon the privilege of doing it. In either case the state has power to make the exaction, and its exercise by the city under state authority violates no provision of the Federal Constitution.   *   *   *

"It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfills the two functions, one a regulating and the other a revenue function. So long as the state law authorizes both regulation and taxation, it is enough, and the enforcement of the ordinance violates no provision of the Federal Constitution."

In *Austin* v. *State*, 101 Tenn. 563, 48 S. W. 305, 50 L. R. A. 478, 70 Am. St. Rep. 703, the court held that cigarettes are not a legitimate article of commerce. This case went to the Supreme Court of the United States, and that court, while holding that the cigarette was a legitimate article of interstate commerce, also held that it was, however, to the same extent as intoxicating liquors, subject to regulation under the police power of the state. The court said:

"Cigarettes do not seem until recently to have attracted the attention of the public as more injurious than other forms of tobacco; nor are we now prepared to take judicial notice of any special injury resulting from their use or to indorse the opinion of the supreme court of Tennessee that 'they are inherently bad and bad only.' At the same time we should be shutting our eyes to what is constantly passing before them were we to affect an ignorance of the fact that a belief in their deleterious effects, particularly upon young people, has become very general, and that communications are constantly finding their way into the public press denouncing their use as fraught with great danger to the youth of both sexes. Without undertaking to

affirm or deny their evil effects, we think it within the province of the Legislature to say how far they may be sold, or to prohibit their sale entirely, after they have been taken from the original packages or have left the hands of the importer, provided no discrimination be used as against such as are imported from other states, and there be no reason to doubt that the act in question is designed for the protection of the public health."

*Austin* v. *Tennessee*, 179 U. S. 343, 21 S. Ct. 132, 134, 45 L. Ed. 224.

In *State* v. *Olson*, 26 N. D. 304, 144 N. W. 661, 666, L. R. A. 1918B, 975, an act prohibiting traffic in snuff was sustained. The court said:

"There is a wide difference in the attitude of the courts towards statutes which restrict that which is harmful and those which restrict that which is harmless. The courts can certainly take judicial notice that the use of tobacco in any form is uncleanly, and that its excessive use is injurious. They can take judicial notice of the fact that its use by the young is especially so. Tobacco, in short, is under the ban."

In *State* v. *Nossaman*, 107 Kan. 715, 193 P. 347, 347, 20 A. L. R. 921, wherein the Kansas act prohibiting the barter, sale, or giving away of cigarettes was sustained, the court said:

"For a number of years there has been a well-settled opinion that the use of cigarettes especially by persons of immature years was harmful, and the courts have recognized that they were deleterious in their effects. Their sale and use have been regulated and prohibited by legislative bodies, and these measures have been upheld as a proper exercise of the police power."

We refer to these cases, not that they decide the question before us as to the validity of restrictions on advertising, but because they show that tobacco and cigarettes are classed by the courts as agencies harmful to health and welfare, and are subject to restriction, control, and regulation within the exercise of the police power.

It is well settled in this state, as elsewhere, that the courts will not declare a statute unconstitutional unless it

clearly and manifestly violates some provision of the Constitution of the state or of the United States. Every presumption must be indulged in favor of the constitutionality of an act, and every reasonable doubt resolved in favor of its validity. *Utah State Fair Ass'n* v. *Green,* 68 Utah 251, 249 P. 1016. The whole burden lies on him who denies the constitutionality of a legislative enactment. ■ *Brown* v. *Maryland,* 12 Wheat. 436, 6 L. Ed. 678. If by any fair interpretation of the statute the legislation can be upheld, it is the duty of this court to sustain it, even though judges may view the act as inopportune or unwise; and it is not within the province of the judiciary to question the wisdom or the motives of the Legislature in the enactment of a statute. *Utah State Fair Ass'n* v. *Green,* supra. The provision in question was regularly passed by the Legislature and approved by the Governor. The presumption should be and is in favor of validity. It must be assumed that the legislative department, whose members pledged themselves by oath to support the Constitution, has not lightly disregarded that pledge. The act must be upheald and enforced unless it manifestly bears no relation to public health, morals, welfare, or other legitimate object of the police power, or, if it does bear such relation, unless it is a plain invasion of constitutional rights.

The scope of the police power is briefly defined, and the function of Legislatures and courts with relation thereto well stated by Mr. Justice Marshall in *State* v. *Redmon,* 134 Wis. 89, 114 N. W. 137, 140, 14 L. R. A. (N. S.) 229, 126 Am. St. Rep. 1003, 15 Ann. Cas. 408, as follows:

"Many attempts have been made to define police power. There is good reason to say that the multitude of such attempts with the many variations in phrasing the matter have not added very much to the simple expression, that it is the power to make all laws which in contemplation of the Constitution promote the public welfare. That both defines the power and states the limitations upon its exercise, it being understood that it is a judicial function to determine the proper subject to be dealt with, and that it is a legislative function, primarily, to determine the manner of dealing therewith, but ulti-

mately a judicial one to determine whether such manner of dealing so passes the boundaries of reason as to overstep some constitutional limitation, express or implied."

The rule as to judicial interference with legislative enactment pursuant to the police power is stated as follows in 6 R. C. L. 242:

"In order to sustain legislation under the police power the courts must be able to see that its operation tends in some degree to prevent some offense or evil, or to preserve public health, morals, safety and welfare; and if a statute discloses no such purpose and has no real or substantial relation to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge; and thereby give effect to the constitution. Only in cases, however, where the legislature exceeds its powers, will the courts interfere or set up their judgment against that of the legislature. Where an act has a real and substantial relation to the police power, then no matter how unreasonable nor how unwise the measure itself may be, it is not for the judicial tribunals to avoid or vacate it upon constitutional grounds, nor will the courts assume to determine whether the measures are wise, or the best that might have been adopted; or whether such laws are invalid on the ground of inexpediency, or whether they bear any real or substantial relation to the public welfare."

The traffic in and use of cigarettes and tobacco being a proper subject to be dealt with by the Legislature, it is a legislative function primarily to determine the manner in which and extent to which it will deal with such subject-matter. *State* v. *Redmon,* supra. The Legislature has, as a part of its program of regulation, prohibited the advertising of cigarettes and tobaccos on billboards and other placards in street cars and elsewhere. As was said by Mr. Justice Stone, speaking for a unanimous court in *Standard Oil Co.* v. *Marysville,* 279 U. S. 582, at page 585, 49 S. Ct. 430, 73 L. Ed. 856:

"We need not labor the point, long settled, that, where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom, and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision."

Had the sale of cigarettes been prohibited entirely, there could be no serious question but that the advertising of them, at least by local agencies, could be lawfully prohibited. *Solomon* v. *Cleveland*, 26 Ohio App. 19, 159 N. E. 121.

In dealing with the subject, the Legislature did not see fit to go further and impose more or other restrictions upon the traffic, nor to prohibit it entirely as it might have done, nor to prohibit all and every sort and kind of ▮▮▮▮ advertising. The reason it did not prohibit other kinds of advertising will be discussed hereafter in this opinion. Police laws need not necessarily be omnibus in character, and it is permissible to legislate against one form of evil, even though other and similar evils have not been condemned. *State* v. *Olson*, supra; *State* v. *Nossaman*, supra. It was said by the Supreme Court of the United States in *Miller* v. *Wilson*, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829:

"The legislature is free to recognize degrees of harm and may confine its restrictions to those classes where it deems the need is greatest, and if the law hits an evil where it is most felt the prohibition need not be all embracing."

In *Truax* v. *Raich*, 239 U. S. 33, 36 S. Ct. 7, 11, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, the court said:

"We have frequently said that the legislature may recognize degrees of evil and adapt its legislation accordingly (St. Louis Consol. Coal Co. v. Illinois, 185 U. S. 203, 207, 22 S. Ct. 616, 46 L. Ed. 872, 875; McLean v. Arkansas, 211 U. S. 539, 551, 29 S. Ct. 206, 53 L. Ed. 315, 321; Miller v. Wilson, 236 U. S. 373, 384, 35 S. Ct. 342, 59 L. Ed. 628, 632, L. R. A. 1915F, 829); but underlying the classification is the *authority to deal with that at which the legislation is aimed.*" (Italics added.)

Advertising is a form of soliciting. *State* v. *J. P. Bass Pub. Co.*, 104 Me. 288, 71 A. 894, 20 L. R. A. (N. S.) 495. We see no reason why the state which may prohibit or

limit the sale of this article, may not also limit or restrict the solicitation of the sale, especially where, as here, it has prohibited the sale to minors. Such solicitation by advertisement is for the purpose of increasing the demand for and use of tobacco. These advertisements do not appeal alone to the class of persons who may lawfully purchase and use cigarettes and tobacco; they are general in their nature, and appeal to all classes and ages of our population. It is inconsistent to say that the Legislature may lawfully prohibit the sale of tobacco to minors of both sexes, but is without power to place any restriction on the solicitation of such persons by advertisements. Laws have been enacted in almost every state in the union prohibiting the sale of tobacco or some of its manufactured forms to minors, but, notwithstanding the enactment of these laws and the attempt to enforce them, the tobacco habit has made great inroads into the youth of the country. The reason would seem quite plain. Manufacturers and dealers have been left free to appeal to the boys and girls as well as adults with most alluring and attractive cigarette and tobacco advertisements, with the result that these laws have become largely ineffective. It is almost useless to pass laws prohibiting the sale of tobacco to minors, and at the same time make no attempt to restrict the solicitation of these same minors by all kinds of alluring and attractive advertisements. The recruits into the ranks of the smokers come largely from the boys and girls rather than from people of maturity. The prohibiting of billboard and other placard advertising has a direct bearing and relation to the object of the act in attempting to prevent the sale to and use of cigarettes and tobacco by minors. The Legislature could well have concluded that the kind and amount of advertising done by the tobacco manufacturers and dealers has amounted to a campaign of propaganda for the purpose of inducing the youth of the community to become users of tobacco in its various forms. We think it clearly within the power of the Legislature, when it undertook to combat or

diminish the evil of smoking among young people, to not only prohibit the sale of these products to minors, but also to strike at a most effective and insidious method of inducement habitually used to lure the youth into the use of these products by prohibiting the advertising of cigarettes and tobacco on billboards, placards, and in street cars.

It is apparent the Legislature believed that in the use, sale, and advertising of cigarettes and tobacco there were evils inimical to the public welfare which required regulation and restriction. In *Rast* v. *Van Deman*, 240 U. S. 342, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455, it is said:

"It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury, but obstacles to a greater public welfare. Eubank v. Richmond, 226 U. S. 137, 142, 57 L. Ed. 156, 158, 42 L. R. A. (N. S.) 1123, 33 S. Ct. 76, Ann. Cas. 1914B, 192; Sligh v. Kirkwood, 237 U. S. 52, 59 L. Ed. 835, 837, 35 S. Ct. 501. And, we repeat, 'it may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary.' Quong Wing v. Kirkendall, 223 U. S. 59, 62, 56 L. Ed. 350, 351, 32 S. Ct. 192, and the cases cited above."

In *Armour & Co.* v. *North Dakota*, 240 U. S. 510, 36 S. Ct. 440, 441, 60 L. Ed. 771, Ann. Cas. 1916D, 548, Mr. Justice McKenna, speaking for the unanimous court, gave expression to views which are pertinent here. A statute requiring that lard sold in packages be in packages of certain sizes was assailed as offending against the equal protection clauses of the Fourteenth Amendment of the Constitution and also on other grounds. The State Supreme Court in its opinion had said:

"The expert who drafted the law, the legislature who passed it, and the governor who approved it, all thought necessity existed for such a measure. If we did not agree with all those, we might well hesitate to say that there was absolutely no doubt upon the question, but in fact a majority of this court believes the law not only reasonable, but necessary, and this belief is founded upon the evidence in this case and upon facts of which this court can take judicial cognizance."

After quoting the above from the state court, Mr. Justice McKenna says:

"The court, by these remarks, expressed the test of a judicial review of legislation enacted in the exercise of the police power, and in view of very recent decisions it is hardly necessary to enlarge upon it. We said but a few days ago that if a belief of evils is not arbitrary, we cannot measure their extent against the estimate of the legislature, and there is no impeachment of such estimate in differences of opinion, however strongly sustained. And by evils, it was said, there was not necessarily meant some definite injury, but obstacles to a greater public welfare. Nor do the courts have to be sure of the precise reasons for the legislation, or certainly know them, or be convinced of the wisdom or adequacy of the laws. Rast v. Van Deman & L. Co.; Tanner v. Little, 240 U. S. 342, 60 L. Ed. 691, 36 S. Ct. 379."

We are not unmindful that the complaint in this case describes the advertisement complained of as merely representing a package of Chesterfield cigarettes with the words "Chesterfield Cigarettes, They Satisfy." We would, however, be derelict in our duty, in passing upon the ██ validity of this enactment, if we fail to see what every seeing person may see, or refuse to know what every person in the community does know. One cannot walk or ride along a public street or highway without being continually attracted by artistic and fascinating billboard advertisements featuring beautiful girls and handsome young men calling attention to the alleged virtues of the various brands of cigarettes and smoking tobacco.

It is claimed by respondent that there is an unjust discrimination in the law, in that only advertising by billboards, street car signs, and placards are prohibited, while advertising by newspapers, magazines, and radio are permitted. Most of the advertising in magazines, newspapers, and by radio is involved in interstate commerce and cannot be reached by state regulation. *State* v. *Salt Lake Tribune Pub. Co.,* 68 Utah 187, 249 P. 474, 48 A. L. R. 553. Section 2, Chapter 52 Laws Utah 1923, made unlawful the advertising of tobacco in its various forms in news- ██ papers, magazines, and pamphlets as well as on bill-

boards and street car signs and placards. The provisions of this act, so far as applicable to newspapers circulating in several states, was by this court in *State* v. *Salt Lake Tribune Pub. Co.*, supra, held invalid as an undue interference with interstate commerce. Thereafter the section was amended by Laws Utah 1929, c. 92, so as to make its restrictions applicable only to advertisements by billboards, placards, and street car signs. It has been held that an act which prohibits local newspapers printed and circulated within the state from advertising tobacco, while permitting the circulation within the state of newspapers printed outside the state, is violative of constitutional provisions. *Little* v. *Smith,* 124 Kan. 237, 257 P. 959, 57 A. L. R. 100. Here, however, there is no such discrimination. Billboards, street car signs, and placards and such are in a class by themselves. They are wholly intrastate, and the restrictions apply without discrimination to all in the same class.

Advertisements of this sort are constantly before the eyes of observers on the streets and in street cars to be seen without the exercise of choice or volition on their part. Other forms of advertising are ordinarily seen as a matter of choice on the part of the observer. The young people as well as the adults have the message of the billboard thrust upon them by all the arts and devices that skill can produce. In the case of newspapers and magazines, there must be some seeking by the one who is to see and read the advertisement. The radio can be turned off, but not so the billboard or street car placard.

These distinctions clearly place this kind of advertisement in a position to be classified so that regulations or prohibitions may be imposed upon all within the class. This is impossible with respect to newspapers or magazines. The classification therefore is not arbitrary or unreasonable, and, when made, there is no legal reason why the classification cannot be sustained as within legislative power.

The subject-matter of the act, that is, the use, sale and advertising of cigarettes and tobaccos, is one upon which

the Legislature has a lawful right to exercise its power. In making classifications the power of legislation over the subject-matter is of vital importance.

This was discussed in *Tanner* v. *Little,* 240 U. S. 369, 36 S. Ct. 379, 383, 60 L. Ed. 691, wherein advertising by means of trading stamps was distinguished from other forms of advertising, wherein it was said, after citing illustrations of lawful classifications:

"Those were instances (and others might be cited) of the regulation of conduct and the restriction of its freedom, it being the conception of the legislature that the regulation and restriction were in the interest of the public welfare. Those classifications were sustained as legal; being within the power of the legislature over the subject-matter, and having proper bases of community.

"But the classification which was sustained in St. Louis Coal Co. v. Illinois, 185 U. S. 203, 46 L. Ed. 872, 22 S. Ct. 616, was condemned in Truax v. Raich, 239 U. S. 33, 60 L. Ed. 131, 36 S. Ct. 7 [L. R. A. 1916D, 545, Ann. Cas. 1917B, 283]. The statute in the latter case required employers of more than five workers at any one time to employ not less than 80 per cent. qualified electors or native-born citizens of the United States or of some subdivision of such. The statute was held void because there was no authority to deal with that at which the legislation was aimed. And this is important to be kept in mind. If there is no such authority, a classification, however logical, appropriate, or scientific, will not be sustained; if such authority exist, a classification may be deficient in those attributes, may be harsh and oppressive, and yet be within the power of the legislature. This has been declared many times. Let us apply the test to the case at bar. Let it be granted that the 'premium system' is a method of advertising; can there not be differences in advertising which may be subject to differences in legislation? Can there not be advertising at places or at times or in kind or effect subversive of public order or convenience? Fifth Ave. Coach Co. v. New York, 221 U. S. 467, 55 L. Ed. 815, 31 S. Ct. 709; Com. v. McCafferty, 145 Mass. 384, 14 No. E. 451."

It is true as urged by respondent that the classification, to be valid, "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.*

v. *Virginia,* 253 U. S. 412, 40 S. Ct. 560, 561, 64 L. Ed. 989. The classification here made is one which meets this requirement. Certainly all persons similarly situated are treated alike, since the law applies equally to all engaged in billboard advertising. From what has been said heretofore, it must be apparent that the "ground of difference" bears a "fair and substantial relation to the object of legislation."

It is possible that advertisements in newspapers and magazines may be equally attractive and alluring and are probably equally effective. Opinions may differ as to the respective effectiveness of one form of advertising compared with another. Advertisements on a billboard, placard, or street car are wholly intrastate, and may be reached by state legislative action, while advertisements in newspapers and magazines are or may be in interstate commerce, and cannot for that reason be controlled by the state. After this court had declared unconstitutional the act prohibiting advertising of cigarettes in newspapers having a circulation beyond the state lines as an interference with interstate commerce, the Legislature enacted the present provision going, as it believed, as far as it had lawful power to go in the direction of curbing the advertisements of tobacco, and to prevent the act from being in direct conflict with the law as announced by the courts (*State* v. *Salt Lake Tribune Pub. Co.,* supra; *Little* v. *Smith,* supra), exempted from the operation of the act the advertising of such articles in newspapers, magazines, and periodicals printed or circulating in the state.

We conclude that the statute in question was enacted within the lawful exercise of legislative power in the interest of public health, morals, and welfare, because the advertising of cigarettes and tobacco has a relation, real and substantial, to the public welfare, that the belief of evils sought to be reached by legislation was not arbitrary, but such evils were obstacles to a greater public welfare. There is no deprivation of due process of law, nor a denial of equal

protection of the laws; the classification adopted by the Legislature is not without good reason, so that all similarly circumstanced are treated alike. Such restrictions upon the use of property and the right to contract will be sustained where imposed in the interest of the welfare of the whole people. It is not for us to set up our views as to the wisdom or effectiveness of such legislation. The responsibility for determining the policy of the state in such matters is upon the legislative department.

The judgment of the district court is reversed.

CHERRY, C. J., and EPHRAIM HANSON, J., concur.

STRAUP, J. (dissenting).

I dissent. Since the various acts on the subject are referred to in the prevailing opinion as regulatory measures, I think it well to further notice them. In 1921 (Laws of Utah 1921, c. 145), the legislature passed an act making it unlawful to sell cigarettes and cigarette papers in the state, to advertise cigarettes or cigarette papers, for proprietors to permit minors to frequent their places of business while using tobacco, and forbidding any person to smoke in certain inclosed public places. By section 1 it thus was provided that it was a misdemeanor for any person, etc., "to barter, sell, keep for sale, furnish or give away, any cigarettes or cigarette papers," to any one. Section 2 forbade any person etc., "to write, print, publish or circulate in any newspaper, magazine, periodical or circular written, printed or published within the state of Utah, any advertisement of cigarettes or cigarette papers," and "to post, exhibit or publish on any street-sign, placard or billboard  *  *  *  any advertisement for cigarettes or cigarette papers." The prohibition of the sale or advertisement of tobacco related only to cigarettes and cigarette papers. By section 3 of the act it was made a misdemeanor for a proprietor of any place of business to knowingly permit minors under 21 years of age to frequent such place of business *while in the act of using tobacco in any form.* By

section 4 it was made a misdemeanor for any person to smoke cigars, cigarettes, or tobacco in any inclosed public place within the state, including dining rooms in hotels, restaurants, cafes, and cafeterias, on street cars, in railway passenger coaches, railway station waiting rooms, barber shops, and in state, county, and city buildings.

As indicated in the prevailing opinion, and as is common knowledge, the act forbidding the sale and use of cigarettes and cigarette papers and of smoking in some of the enumerated public places, such as restaurants, hotel dining rooms, and in some other public places, met with such general disapproval and was so openly disregarded that the next Legislature, Laws of Utah 1923, c. 52, repealed it, including the prohibition of the sale of cigarettes and cigarette papers, and in lieu thereof provided that it was unlawful for any person, etc., to "sell or offer for sale, cigarettes or cigarette papers in the State of Utah, without first having obtained a permit therefor," to be granted by boards of city commissioners, city councils, boards of trustees of towns, and boards of county commissioners in territory outside of any city or town. To obtain the permit and license to sell cigarettes and cigarette papers, the licensee was required to pay "an annual license fee," from $100 to $25, and a "tax" from one to two mills on each cigarette, one-half cent on a package of fifty cigarette papers, one cent on one hundred papers, and one-half cent for each fifty papers exceeding one hundred papers. Thus, on obtaining the permit and paying the annual license fee and the tax, the sale of cigarettes and cigarette papers was again made lawful and the traffic and business therein permitted to be carried on as any other lawful business. The act, however forbids any one from selling or furnishing tobacco of any kind to a minor under 21 years of age, which was but a re-enactment of section 8442, Comp. Laws Utah 1917, and in force in this state for many years. By the act it was further provided that it was unlawful for a proprietor of any place of business to knowingly permit minors under 21 years of age to frequent such

place of business while in the act of using tobacco in any form, which was but a re-enactment of the provision in such particular of the Laws of 1921. However, at and in all other places a minor was and is at liberty to chew and smoke smoke tobacco in all its forms without restriction and under the same conditions that an adult is permitted to use tobacco.

With respect to the advertising or display of tobacco, including cigarettes, section 2 of the act of 1923 provided:

"Sec. 2. *Advertising or Display of Tobacco, Cigarettes, etc.* It shall be a misdemeanor for any person, company or corporation to write, print, publish, or circulate in any newspaper, magazine, periodical or circular written, printed or published within the State of Utah, or any street-sign, placard, or billboard, street-car, package of merchandise other than the merchandise licensed in this Act, or any other place of display, any advertisement of cigarettes or cigarette papers, cigars, chewing tobacco or smoking tobacco or any disguise or substitute of either of these except that a dealer in tobacco and cigars may have a sign on the front of his place of business stating that he is dealing in such articles, and excepting further that cigars, chewing tobacco and smoking tobacco may be advertised in any newspaper published within the State of Utah, provided, however, that nothing herein shall be so construed as to permit advertising of cigarettes in any manner.

"Nor shall any cigarettes or cigarette papers, or any advertisement thereof, be displayed in any store-window, in the State of Utah, provided however, that nothing in this section contained shall be construed so as to prohibit the display of tobacco and the advertisements thereof, other than cigarettes and the advertisements thereof, in store windows."

The act also modified the provision of the Laws of 1921 as to smoking in inclosed public places, and since then and now smoking in restaurants, dining rooms of hotels, and in other enumerated inclosed public places, even in the inviolable sanctity of a barber shop, is permitted. It is thus seen that the main feature of the act of 1923 is a revenue measure, and whatever regulatory character it may have relates to the subject of advertising of tobacco.

A consideration of section 2 of the act of 1923 in such respect was before this court in the case of *State* v. *Salt Lake*

*Tribune Pub. Co.,* 68 Utah 187, 249 P. 474, 48 A. L. R. 533. The case involved the right of the publishing company printing a newspaper in Utah and circulating therein and among the several states, to publish in its newspaper an advertisement of Lucky Strike Cigarettes. The act, as is seen, forbade such an advertisement. It was held unconstitutional as constituting an interference with the interstate commerce clause of the Federal Constitution. The court, however, expressly stated, that having reached such conclusion, it found it unnecessary to express an opinion and expressed none as to the validity of the act in other respects.

Thereafter Laws of Utah 1929, c. 92, the Legislature amended section 2 of the Laws of 1923. Chapter 92 is entitled, "Advertising Cigarettes and Tobacco." The enacting clause is, an act amending section 2, chap. 52, Laws of Utah 1923, "relating to the advertising, or display of tobacco, cigars, cigarettes and cigarette papers." The section as so amended and under which the defendant was prosecuted for advertising on a billboard "Chesterfield Cigarettes, They Satisfy," and which section the court below held unconstitutional, is as follows: "It shall be a misdemeanor for any person, company, or corporation, to display on any bill board, street car sign, street car, placard, or on any other object or place of display, any advertisement of cigarettes, cigarette papers, cigars, chewing tobacco, or smoking tobacco, or any disguise or substitute of either, except that a dealer in cigaretes, cigarette papers, tobacco, or cigars or their substitutes, may have a sign on the front of his place of business stating that he is a dealer in such articles, provided that nothing herein shall be construed to prohibit the advertising of cigarettes, cigarette papers, chewing tobacco, smoking tobacco, or any disguise or substitute of either in any newspaper, magazine or periodical printed or circulating in the State of Utah."

By the amendment it is seen that it is unlawful to advertise tobacco in any form, including cigarettes, or any substitute thereof, on any billboard, street car sign, or placard,

etc., but is lawful, without restriction, to advertise all kinds of tobacco, including cigarettes and cigarette papers, in any newspaper, magazine, or periodical, printed or circulated wholly within the state or among the several states.

It is the validity of that provision which here is drawn in question. The question is not to be set aside or displaced by interjecting another thought to be more easily or readily disposed of. It is not now the question as to what the Legislature in the legitimate exercise of the police power may do with respect to prohibiting, regulating, or controlling the manufacture, sale, traffic, or use of tobacco. It is enough now to know that no such legislation of the state has been attempted. It is time enough to express an opinion concerning it when that is done. The question thus is not what the Legislature in such respect may do, but What has it done? Hence the cited cases in the prevailing opinion as I think are not applicable. None of them uphold such kind of legislation as is here involved and drawn in question. And it in effect is conceded that the cited cases in the prevailing opinion have no direct application to the question in hand.

If the act is valid, and it thus is unlawful to advertise cigarettes on a billboard, then, too is it unlawful to advertise on a billboard cigars or any other form of tobacco. That engaging in the business of selling and dealing in tobacco including cigarettes is a lawful pursuit is not disputed. Attempt was made by the act of 1921 to prevent the sale of cigarettes. But that act was repealed in 1923, and since then, as presently will be noticed, it is just as lawful to sell cigarettes as it is to sell any other form of tobacco. That advertisement of a lawful business is legitimate and requisite to successfully carry it on and is a necessary incident thereto may also not well be disputed. If a business is legitimate and permitted to be carried on by legislative sanction, I do not well see by what authority the Legislature may prevent proper and legitimate advertisement of it, any more than it may prevent the making of contracts in connection with or in relation to the business. Here the Legislature

has said that the only permissible method of advertising tobacco is in newspapers, magazines, and periodicals not only published and circulated among the several states, but also those published and circulated wholly within the state, and wherein may be displayed all kinds of alluring and attractive advertisements thereof. Nor are advertisements of tobacco forbidden by radio or by distribution of handbills or circulars on the street or from door to door of households nor by any other method, except by billboards and other similar displays. Such permitted methods of advertisements of tobacco are not regarded as inimical to public health, morals, or general welfare; but when the modest advertisement, "Chesterfield Cigarettes, They Satisfy," is displayed on a billboard, it is feared that the morals or health of the youths of the state are likely to be injuriously affected, and the youths caused or induced to procure tobacco and cigarettes, but for which kind of advertisement they would not be able or are less likely to procure them.

It is argued that the act of 1923 is regulatory and indicates a general policy of the state to restrict the sale and use of tobacco, especially of cigarettes. A careful, even a cursory, reading of the act shows that it is and was intended to be a mere revenue measure. By the act no tax or license is imposed nor is any permit required to sell or to engage in the business of selling or dealing in tobacco in any form, except cigarettes. But the requirement of an annual license fee of from $100 to $25, and a tax on each cigarette and on cigarette papers, to sell cigarettes and cigarette papers, clearly is a revenue and not a police measure. The general rule is, and as stated in 37 C. J. 170, that, where a fee is exacted primarily for revenue purposes, and payment of it gives the right to carry on a business or occupation without the performance of any more conditions, it is not a license fee, but a tax imposed, regardless of the name by which it may be called. The business or sale of the commodity which is the subject of the license and tax being itself lawful and sanctioned, the permit

granted is but a convenient method of assessing and collecting the tax. 1 Cooley on Taxation (4th Ed.) 407; *Royal* v. *State of Virginia,* 116 U. S. 572, 6 S. Ct. 510, 29 L. Ed. 735; *Waters-Pierce Oil Company* v. *City of Hot Springs,* 85 Ark. 509, 109 S. W. 293, 16 L. R. A. (N. S.) 1035; *City of Portland* v. *Portland Gas & Coke Company,* 80 Or. 194, 150 P. 273, 156 P. 1070; Ex parte Mayes, 64 Okl. 260, 167 P. 749; *State ex rel. Wyatt* v. *Ashbrook,* 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. Rep. 765. And to that effect is the case of *Matthews* v. *Jensen,* 21 Utah 207, 61 P. 303, and the recent case of *Best Foods, Inc.,* v. *Christensen* (Utah) 285 P. 1001 where numerous cases are referred to in support thereof.

When thus the permit is had and the socalled license fee and tax paid, the business of selling cigarettes and cigarette papers is just as lawful and with just as much legal sanction, as is the selling of any other form of tobacco. By the act the business itself in no particular is regulated. It does not even pretend to have any such purpose. There is no language in the act from which such a purpose may even be inferred or implied. It does not regulate or control anything, nor pretend to do so. As to that, it may here be said as was said by the court in the case of Ex parte Mayes, 64 Okl. 260, 167 P. 749, 750, that "the statute does not purport to have in mind a regulation. It imposes no conditions and contains no restrictions for the carrying on of the business; neither does it attempt to regulate or control those lawfully engaging in the business. Its primary and indeed only, purpose, is to authorize the collection of a tax."

We thus are brought back to the proposition, and to the real question in hand, as to whether it was competent for the Legislature in the exercise of the police power, to curtail or prevent advertisements of a commodity of a lawful business, especially to forbid advertisements by a particular method not itself obnoxious or inimical to public morals or general welfare, and at the same time permit ad libitum

all sorts of alluring and attractive advertisements of the same article or commodity by various other methods. Let it be assumed that where in the legitimate exercise of the police power the manufacture or sale of, or traffic in, an article or commodity, or the carrying on of a business, has been prohibited, it also is within the police power to prohibit or prevent advertisements of such commodities or business. But, as is seen, that is not the situation here. The Legislature has not prevented nor did it attempt to prevent the advertisement of tobacco. The prohibitions go merely to the particular method or medium of advertisement, advertisements on billboards, etc. The medium or method of billboard advertisement, as is common knowledge, has become general and without any legislative restriction of the state is permitted and is extensively employed as to advertisements of all other kinds of articles and commodities of merchandise. Not anything is made to appear or even suggested that displaying advertisements on billboards is obnoxious or inimical to public morals or public welfare, any more than is the publication and circulation of the same kind of advertisement in a newspaper, magazine or periodical or by any other method. If the one is obnoxious and inimical to public morals, etc., so would it seem must also be the other.

The law is well settled that the operation of a statute must be determined from the natural and legal effect of the language employed, and whether the statute is or is not repugnant to constitutional provisions, either state or federal, must be determined from its natural effect when put in operation and not from its proclaimed or asserted purpose. What is meant by, and when an act may be upheld on the theory of police power, is well stated in 22 Am. & Eng. Ency. of Law 938 as follows:

"In order that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see (1) that the enactment has for its object the prevention of some offense or manifest evil for the preservation of the public health, safety, morals or general welfare, and (2) that there is some clear, real and substantial connection between the assumed purpose of the enactment and the

actual provisions thereof, and that the latter do in some plain, appreciable manner tend towards the accomplishment of the object for which the power is exercised. The police power cannot be used as a cloak for the invasion of personal rights or private property, neither can it be exercised for private purposes or for the exclusive benefit of particular individuals or classes."

The propositions also are well put in 6 R. C. L. 237 that,

"In order to sustain legislative interference by virtue of the police power, under either a statute or a municipal ordinance, it is necessary that the act should have some reasonable relation to the subjects included in such power, and the law must tend, in a degree that is perceptible and clear, toward the preservation of the public welfare, or toward the prevention of some offense or manifest evil, or to the furtherance of some object within the scope of the police power. The mere assertion by the legislature that a statute relates to the public health, safety or welfare does not in itself bring that statute within the police power of a state; for there must be obvious and real connection between the actual provisions of a police regulation and its avowed purpose, and the regulation adopted must be reasonably adapted to accomplish the end sought to be attained. One application of the familiar rule that the validity of an act is to be determined by its practical operation and effect and not by its title or declared purpose is that a constitutional right cannot be abridged by legislation under the guise of police regulation; since the Legislature has no power, under the guise of police regulations, to invade arbitrarily the personal rights and personal liberty of the individual citizen, or arbitrarily to interfere with private business, or impose unusual and unnecssary restrictions upon lawful occupations, or to invade property rights."

To the same effect also is 12 C. J. 929. Many cases, both federal and state, are cited which fully support the texts. Special reference, however, may be made to the cases of *Lochner* v. *New York,* 198 U. S. 45, 25 S. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; *State ex rel.* v. *Ashbrook,* 154 Mo. 375, 55 S. W. 627, 48 L. R. A. 265, 77 Am. St. Rep. 765; and *State* v. *Redmon,* 134 Wis. 89, 114 N. W. 137, 14 L. R. A. (N. S.) 229, 126 Am. St. Rep. 1003, 15 Ann. Cas. 408.

Just as well is it settled that however broad and comprehensive the police power of the state may be, the exercise of the power nevertheless is not without limitations, and

that the Legislature in the exercise of the power may not transgress or infringe upon either state of federal constitutional provisions. *Logan City* v. *Public Utilities Comm.*, 72 U. 536, 271 P. 961; *Sol Block & Griff* v. *Schwartz*, 27 Utah 387, 76 P. 22; 12 C. J. 928, 6 R. C. L. 195.

So, too, is it well settled that whether the police power has been exercised within proper limitations, whether or not the act is a reasonable exercise thereof, whether a particular measure is designed to further some governmental function and bears some reasonable, obvious, or direct relation to the purpose sought to be accomplished, are all judicial questions. 6 R. C. L. 242, and cases there cited.

Such propositions may not and are not disputed, but here are shaded and minimized and not given proper force or effect. Timely observations were made by Mr. Justice Marshall in *State* v. *Redmon,* supra. Among other things he says:

"Doubtless the fathers of the Constitution foresaw the likelihood and danger of the security of personal rights, which the fundamental law was intended to firmly entrench with the judiciary as its efficient defender, being jeopardized at times by excessive regulation of the ordinary affairs of life. * * * The idea is found expressed now and then, that the police power is something not dealth with or affected by the Constitution, at least in any marked degree, which is a mistake hardly excusable. The error suggested here and there, that the police power is 'a sovereign power in the state, to be exercised by the Legislature, which is outside, and in a sense above, the Constitution (Donnelly v. Decker, 58 Wis. 461, 17 N. W. 389, 46 Am. Rep. 637), and that a police regulation which is clearly a violation of express constitutional inhibition is legitimate, subject to a judicial test as to reasonableness * * * (Tiedeman, State and Federal Control, § 3), or that no police regulation, not condemned by some express constitutional prohibition, is illegitimate, or that legislation not so condemned is legitimate if the law-making power so wills, though it violates some fundamental principles of justice, or that the reasonableness of a police regulation, and whether it unjustly deprives the citizen of natural rights, is wholly of legislative concern (Hedderich v. State, 101 Ind. 564, 1 N. E. 47, 51 Am. Rep. 768), and others of a similar character now and then found in legal opinions and text-books, are highly misleading' and have been distinctly discarded by this court. State ex rel. Milwaukee Medical College v. Chittenden [127 Wis. 468, 107 N. W.

500], supra. \* \* \* 'If it were true that all police regulations are legitimate which are reasonable, and all are reasonable which the Legislature so wills, the Constitution as to very much of the field of civil government would be of no use whatever. The contrary has been the rule without any legitimate question since Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60.' \* \* \* The idea that all legislation is within the police power which the law-making authority determines to be so, and that all which might be within such power is within it if the Legislature so determines is, as we have seen, a heresy, and one which was repudiated sufficient for all time by the early decision, heretofore referred to, in Marbury v. Madison, supra, the American classic which first and conclusively defined the general character of the constitutional limitations and the relations of the Legislature and the judiciary thereto and to each other. The doctrine there laid down more than a century ago in the unanswerable logic of Chief Justice Marshall has never been departed from, except accidently, inconsiderately or ignorantly."

In *Mugler* v. *Kansas,* 123 U. S. 623, 8 S. Ct. 273, 297, 31 L. Ed. 205, Mr. Justice Harlan said:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty, indeed, are under a solemn duty, to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

In the case of *Ex parte Jentzsch,* 112 Cal. 468, 44 P. 803, 804, 32 L. R. A. 664, the California court, among other things, said:

"So, while the police power is one whose proper use makes most potently for good, in its undefined scope and inordinate exercise lurks no small danger to the republic; for the difficulty which is experienced in defining its just limits and bounds affords a temptation to the legislature to encroach upon the rights of citizens with experimental laws none the less dangerous because well meant."

In the case of *Boyd* v. *U. S.,* 116 U. S. 616, 6 S. Ct. 524, 535, 29 L. Ed. 746, Mr. Justice Bradley said:

"Constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the rights, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be obsta principiis."

The claim made by the state and adopted in the prevailing opinion in effect is that since the sale of tobacco to a minor under 21 years is prohibited, the act in question forbidding advertisements of tobacco on billboards is a legitimate exercise of the police power as tending to prevent or lessen sales of tobacco to minors, especially cigarettes, and to prevent or lessen the use of tobacco by minors as well as by adults; that is to say, as is claimed, preventing advertisements of tobacco on billboards, in street cars or on placards, will cause or induce dealers not to sell or furnish tobacco to minors, cause or induce minors not to buy or use tobacco, and will lessen the use thereof by both minors and adults, and that an advertisement of tobacco on billboards, etc., will suggest to minors and to adults a desire to use tobacco which otherwise would not be suggested to them if such advertisements were not permitted on billboards, and that advertisements of tobacco, including cigarettes, in newspapers, magazines, and periodicals or by other permitted methods of advertisements thereof have no such tendency. In other words, as is claimed, to protect the youth of the state against the use of tobacco and to prevent or lessen the use thereof by adults as well, the Legislature permitted ad libitum all kinds of alluring and attractive advertisements of tobacco in newspapers, magazines, and periodicals, whether printed and circulated wholly within the state, or among the several states, and permitted all other methods of advertisements of tobacco, except on billboards, street cars, placards, or on other objects of display. And on such theory is the claim made that the section of the statute under consideration and forbidding advertisements

of tobacco on billboards, etc., has for its object the prevention of a manifest evil and the preservation of public health, morals, and general welfare, and bears a real and direct relation between such purpose of the enactment and the accomplishment of the claimed and asserted object or end. To support that, the state cites numerous authorities.

*Merrick* v. *N. W. Halsey & Co.*, 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498, and *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643, cases involving the validity of the so-called blue sky law regulating sales and dealings in corporate stocks and other securities to protect investors against fraud, etc.; *In re Fred Oberg*, 21 Or. 406, 28 P. 130, 14 L. R. A. 577, involving the validity of a statute providing that no officer or seaman of a sea-going vessel or ship should be arrested or imprisoned for debt, which act applied to all sailors of sea-going vessels or ships and entitled all under the same circumstances and conditions to enjoy the granted privilege and immunity; *Soon Hing* v. *Crowley*, 113 U. S. 703, 5 S. Ct. 730, 28 L. Ed. 1145, involving the validity of an ordinance prohibiting washing and ironing in public laundries and washhouses within restricted territorial limits, from 10 o'clock at night to 6 o'clock in the morning, being an ordinance adopted to regulate the establishment and maintenance of public laundries and washhouses, to make inspections by health officers and boards of fire wardens as to conditions with respect to stoves, drying apparatus, and appliances for heating smoothing irons, so as to guard against dangers to surrounding property from fire, and to inspect premises in which it is proposed to carry on the business; *Halter* v. *Nebraska*, 205 U. S. 34, 27 S. Ct. 419, 51 L. Ed. 696, 10 Ann. Cas. 525, where the validity of a statute was upheld preventing desecrations of the flag of the United States and the use of the flag for advertising purposes, etc., the doing of which things, said the court, discredited and cheapened the flag in the estimation of the public and defeated the maintenance of it as an

emblem of national power and national honor; *N. Y., N. H. & H. R. R.* v. *New York,* 165 U. S. 628, 17 S. Ct. 418, 41 L. Ed. 853, involving a statute regulating the heating of steam passenger cars and directing guards to be placed on railroad bridges and approaches thereto; *Powell* v. *Pennsylvania,* 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253, involving an act regulating the manufacture and sale of products in imitation of butter and cheese and preventing adulterations of butter, cheese, and other dairy products; *Fischer* v. *St. Louis,* 194 U. S. 367, 24 S. Ct. 673, 48 L. Ed. 1018, involving a municipal ordinance prohibiting the erection of any barn or cow stable within the city limits without permission from the municipal authorities and prescribing conditions and circumstances under which such a permit may be had; *Lieberman* v. *Van De Carr,* 199 U. S. 552, 26 S. Ct. 144, 50 L. Ed. 305, involving an ordinance regulating the sale and distribution of milk in the city of New York under the supervision of and upon conditions imposed by the Public Board of Health; *Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77; *Budd* v. *New York,* 143 U. S. 517, 12 S. Ct. 468, 36 L. Ed. 247; *Brass* v. *Stoeser,* 153 U. S. 391, 14 S. Ct. 857, 38 L. Ed. 757; and *W. W. Cargill Co.* v. *Minnesota,* 180 U. S. 452, 21 S. Ct. 423, 45 L. Ed. 619; cases involving acts regulating public warehouses and warehousing and inspecting, weighing, and handling of grain, etc.; *Whyte* v. *City of Sacramento,* 65 Cal. App. 534, 224 P. 1008, involving an ordinance relating to the use of trucks over a certain weight on streets in designated districts; and *Mack* v. *Westbrook,* 148 Ga. 690, 98 S. E. 339, involving an act providing for the condemnation of vehicles and other conveyances used on public or private highways in conveying liquors and intoxicating beverages, the sale or possession of which was by law prohibited.

In all such cases the ordinance or act in question was upheld as a proper and legitimate exercise of the police power and not as transgressing any constitutional provision. Many of them relate to matters of mere regulation. Hundreds of other cases could be cited where similar rulings

were made. But in all the cited cases the ordinance or act called in question, by the natural and legal effect of its language, had for its object the prevention of some offense or evil, or the preservation of public health or public morals or general welfare, and had on obvious, or real, or direct relation to, and in some plain, definite, and tangible degree tended toward, the accomplishment of the object or purpose for which the police power was exercised.

Because such a relation was so shown in such cases, it does not follow that an obvious or direct relation also is shown in the case in hand, or in other cases of different facts or enactments. Every decision or opinion is dependent upon the facts upon which it is founded and must be considered in view, of, and may not without reference to them be indiscriminately applied to cases of dissimilar facts or enactments. As has been seen, the operation of the statute must be determined from the natural and legal effect of the language employed and whether the act as a police measure is designed to further some governmental function and as to whether it bears some real or direct relation to the purpose sought to be accomplished, are as the text and cases teach judicial questions. Here no such relation from the language or operation of the act appears.

It in effect is argued that the subject-matter of the act relates to the sale, use, and advertisement of tobacco, including cigarettes, and to restrict the sale and use of tobacco. The argument, as I think, is not supported by the act, as a reading of it will clearly show. By it the sale of tobacco to minors is prohibited. But there is no restriction or regulation whatever as to carrying on the business of selling or dealing in or of using tobacco. True, a license fee and tax is exacted to sell cigarettes and cigarette papers, but that, as hase been seen, is for revenue and not for regulation of the business or in carrying it on, and from which the state derives an annual revenue of $200,000 or more. Upon paying the tax and obtaining the permit a dealer is as free to sell

cigarettes to adults as he is to sell tobacco in all other forms, without any restriction of regulation whatever, and to the same extent that he is privileged to sell and deal in any other commodity or article of merchandise. And, further, as has been seen, the act does not forbid advertisements of tobacco including cigarettes. And since selling and dealing in tobacco is a lawful business and the use of tobacco, not even by minors, restricted or forbidden, and since advertising is a necessary incident to carrying on the business, it would seem somewhat anomalous legislation, if the Legislature had attempted to forbid all advertisements of tobacco. What the Legislature did is to permit advertisements of all kinds of tobacco, including cigarettes, except on billboards and on other similar objects of display. What it thus did is to strike at and banish billboard and other similar methods of advertisements, in no sense and not claimed to be an obnoxious or improper method of advertising, while permitting without restriction advertisements of tobacco by all other methods.

It also is argued that advertisements on billboards are attractive and tend to increase sales of the commodity so advertised. Let it be assumed such advertisements are attractive and increase sales of the commodity advertised. Such is the purpose of all advertisements by calling attention to the article or commodity advertised, its description and quality, and place where it may be had. Certainly the Legislature may not require one merchant or dealer in a lawful commodity or business to hide his advertisement under a bushel, while others are permitted to display them on the housetop. A method of advertisement, not obnoxious in and of itself, is not to be banished because it may be an attractive and effectual method. Further, the prohibition to advertise on billboards does not apply to all persons. It applies only to those engaged in selling or dealing in tobacco, a business as lawful as any other business. It applies to no one else engaged in any other kind of business. As well say that all those engaged in the automobile business may not advertise

their business on billboards while all other kinds of business may be so advertised.

It also is argued that the use of tobacco is by some regarded as injurious to health. But the Legislature has not as yet forbidden the sale or use of it. Some may regard the sale and use of Coca-Cola or of tea or of coffee injurious to health. Until the Legislature forbids or restricts the sale or use of them, I do not well see how it may declare that any of these may not be advertised on billboards, while permitting them to be advertised by all other methods, and at the same time permit all other articles or commodities of merchandise of a lawful business to be advertised on billboards.

Because the Legislature may not control advertisements in newspapers, magazines, and periodicals circulating among the several states, it is asserted such restriction does not prevent it from forbidding advertisements on billboards wholly within the state. In the first place the act permits advertisements of tobacco in newspapers, magazines, and periodicals, not only those circulating among the several states, but also those printed and circulated wholly within the state. In the next place, the suggestion is not unlike what a noted humorist once said, that if one is unable to "lick" another who had given offense, then flog his child, or throw a stone at his dog across the street. If it be incompetent for the Legislature to forbid advertisements in newspapers, magazines, and periodicals, then I do not well see on what theory it may forbid advertisements by some other legitimate method not itself obnoxious or inimical to public morals or general welfare, without creating and unwarranted discrimination, and denying equal rights and privileges, and especially when the method is forbidden only as to a particular commodity or article of merchandise of a lawful business and at the same time permitted as to all other articles or commodities of merchandise. In other words, if one method of advertising in the state by citizens outside the state is required and granted, then it is difficult to see on what theory citizens of the state may be denied another method or methods of advertising in no sense obnoxious to public morals or general wel-

fare, and equally legitimate and proper as the method granted to and permitted by citizens outside the state, without denying citizens within the state, not as to mere form, but as to substance and essence, the same rights and privileges granted to citizens outside the state.

Then, further, I do not see, nor in what way it is even indirectly shown that, since it is unlawful for any one to sell or furnish tobacco in any form to a minor, wherein an advertisement of tobacco displayed on a billboard will more readily enable a minor to obtain or use tobacco, or by preventing such method of advertisements will render it more difficult for him to obtain it, or protect him against the use of it, when at the same time all sorts of alluring and attractive advertisements of tobacco may be and are had in newspapers, magazines, or periodicals, and by all other methods of advertisements.

The suggestion that advertisements on billboards are more readily seen or "forced" on public attention than advertisements in newspapers, magazines, or periodicals or that the one is thrust on the public while the other to be seen must be sought for, and for such reason the one method is more effectual and impressive than the other or others, is, as I think, without merit, and is refuted by common knowledge and observation that numerous newspapers, magazines, and periodicals of all kinds carrying in prominent and conspicuous places all sorts of richly designed and attractive and alluring advertisements of tobacco and displayed in attractive colors and pictures, find their way in about every household in the state and are or may be seen and noticed by about every member of the family able to read, and many of them distributed and delivered by minors. That billboard advertisements may be regarded as more attractive and effectual than advertisements in newspapers and magazines, or by radio, no doubt would stoutly be disputed by newspaper and magazine publishers and by radio advertisers. Though billboard advertisements may be regarded as attractive and effectual methods of advertising, yet, since such

method is not obnoxious or inimical to public morals or general welfare, that does not justify banishing billboard advertisements of an article or commodity of merchandise of a lawful business. Nor do I see any basis for the contention that permitting advertisements of tobacco on billboards tends to induce dealers or others, in violation of the statute forbidding it, to sell or furnish tobacco to minors, or that preventing such method of advertising tends to restrain or prevent minors from obtaining or using tobacco. At least such a relation or connection in no sense is obvious or direct, and at most is but extremely remote. If it be thought wise and necessary to prohibit or restrain a minor from the use of tobacco, or to protect him against its use, let some proper legislation be had which by some direct or appropriate manner tends to accomplish such end or purpose, and not by banishing billboard advertisements of tobacco, while at the same time permitting all sorts of advertisements thereof by all kinds of other methods.

We have a statute which forbids a minor under a prescribed age from operating a motor vehicle on a public highway or thoroughfare. In some jurisdictions dealers and others are also forbidden from selling or intrusting a motor vehicle to a minor under a prescribed age and which knowingly is to be used and operated by the minor on a public street or thoroughfare. In such case it may not successfully be asserted that it is competent for the Legislature to forbid advertisements of automobiles on billboards while at the same time permitting all sorts of advertisements of them in newspapers, magazines, and periodicals, on the theory that preventing advertisements on billboards tends to prevent a minor under the prescribed age from operating a motor vehicle on a public street or thoroughfare or others from instrusting a motor vehicle to him. No one would contend that, yet in principle the presence of any real, direct, or obvious relation between the thing prevented and the claimed object sought to be accomplished is as wanting in the one case as in the other. In each the asserted relation has neither

substance nor even shadow to support it, and is based on mere fancy and vagary. Nor may the analogy be denied on the theory that in the one the subject, the use of tobacco, may be regarded as pernicious and injurious, while in the other, a motor vehicle is not itself harmful or dangerous or fraught with evil consequences. While a motor vehicle may not in and of itself be so regarded, yet, in the hands of a youth or other immature or inexperienced person operating it, a motor vehicle on a public street or thoroughfare is highly dangerous and a menace, not only to such a person operating it, but also to the safety of the public; and on such theory minors under a prescribed age by legislative enactments are forbidden operating motor vehicles on public streets.

But further as to this. Selling tobacco in all its forms including cigarettes to adults without restriction is lawful and expressly permitted by legislative sanction. Since a dealer may thus lawfully engage therein, he, by proper advertisement, may make known the kind and quality of his goods and the place where they may be had. To deny him that right is in effect, or to a large extent, to deny him the benefit or enjoyment of the property right granted him of carrying on the business permitted to be carried on by him. Why should he thus be deprived by proper advertising from making known to those who without restriction may lawfully purchase and use them, the kind and quality of his goods and the place where they may be had, because the method not harmful or obnoxious in and of itself and chosen by him is attractive and effectual and tends to increase his business? The question may not be answered by the assertion that the use of tobacco by some is thought to be a public evil and a menace to public health and morals, for such an answer or claim is completely refuted by the legislative act itself which permits all kinds of methods of advertisement of tobacco and prevents none, except on billboards and other similar objects of display, and by the legislative will of the state legalizing and permitting the sale of tobacco in all

forms to adults, and without restriction permitting the use of it by them as well as by minors, except that a proprietor may not permit a minor to frequent his place of business while *the minor is in the act of using tobacco in any form.*

I thus see no obvious or real or direct relation or connection between the assumed or asserted purpose of section 2 of the act and the provisions thereof, or wherein the latter in any plain or appreciable manner tends towards the accomplishment of the object for which it is claimed the police power was exercised, preventing advertisements of tobacco on billboards.

In *Meyer* v. *Nebraska,* 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446; *Bartels* v. *Iowa,* 262 U. S. 404 S. Ct. 628, 67 L. Ed. 1047, and in *Bohning* v. *Ohio,* 262 U. S. 404, 43 S. Ct. 628, 67 L. Ed. 1047, the validity of statutes forbidding the teaching of modern foreign languages in educational institutions was called in question and where thereunder teachers were proceeded against for teaching the German language in such institutions. The state courts held the acts constitutional on the theory that teaching such languages, especially the German language, tended to inculcate in the minds of the youth systems or principles of government hostile or inapplicable to our institutions and before the youth had been sufficiently taught the principles of our own government, and tended to inculcate ideas and sentiments foreign to the best interests of our country; that, as the English language is the prevailing and national language of this country, no other language, or subject not in the English language, should be taught, and that to do so was inimical to civic development and public good. The acts, by the Supreme Court of the United States, were held unconstitutional and as having no such asserted relation or any real or obvious relation to anything within the legitimate scope of the police power.

In *George* v. *City of Portland,* 114 Or. 418, 235 P. 681, 39 A. L. R. 341, the case involved an ordinance which provided

that no license to engage in a soft drink business should be issued to any person not a citizen of the United States. It was there urged that the purpose of the ordinance was to further the enforcement of laws prohibiting traffic in alcoholic and intoxicating liquors. The Supreme Court of the state in effect held that no such purpose was real or obvious, that nonintoxicating beverages had not been outlawed, and that the right to contract concerning them and to buy, sell, and possess them was within the protection of constitutional provisions which were infringed upon by an unreasonable and unwarranted exercise of the police power. Cases are in great number involving a variety of subjects where enactments were held invalid because there was no direct or real relation between the means employed and the object or purpose sought to be accomplished within the scope of the exercise of the police power.

The principles announced in *Lochner* v. *New York,* supra, may here again be noticed, that mere assertions that a subject relates though but in a remote degree to the scope of the police power, does not render the enactment valid, and that the act must have a more direct relation, as a means to an end, and that the end itself must be appropriate and legitimate, before an act can be held to be valid which interferes with the general right of an individual to be free in his person and in his power to contract and in his enjoyment of property and property rights.

In the case of *Little* v. *Smith,* 124 Kan. 237, 257 P. 959, 961, 57 A. L. R. 100, the court had under consideration a statute which made it unlawful to advertise cigarettes or cigarette papers in a newspaper or other periodical "published, offered for sale or for free distribution within the state of Kansas," or to advertise cigarettes or cigarette papers on any street sign or billboard or otherwise. In holding the act invalid, the court with respect thereto among other things said:

"While the police power is wide in its scope and gives the Legislature broad power to enact laws to promote the health, morals,

security, and welfare of the people, and, further, that a large discretion is vested in it to determine for itself what is deleterious to health, morals, or is inimical to public welfare, it cannot under the guise of the police power enact unequal, unreasonable, and oppressive legislation or that which is in violation of the fundamental law. The statute in question supplanted and repealed one prohibiting the sale and disposal of cigarettes and which had been theretofore held valid. The later act authorized the sale of these except as to minors. This act treats cigarettes as articles of commerce, and it is essentially an act to raise revenue. It is competent for the Legislature to include in an act provisions for regulation as well as for raising revenue, if its provisions do not violate constitutional limitations. It is readily apparent that the dominant theory of the act is to provide revenue. It is stated and seems to be conceded that the revenue raised under the act will amount to at least $1,000,000 each year. Having legalized the sale of cigarettes, thus making them articles of commerce, can the Legislature restrict the making of contracts for advertising which operates unequally as between publishers engaged in that business? It is conceded that the act is ineffective as against publishers outside of the state, whose newspapers and publications have a much larger circulation than those issued by the plaintiffs and other publishers within the state. Because of this condition it may well be doubted whether the restriction as to advertising can have any appreciable effect in preventing sales to minors, where outside publications which go into almost every household carry full-page advertisements of cigarettes, or whether the restriction on local publishers contributes in any substantial degree towards accomplishing the avowed purpose of promoting the public welfare. A statute restraining the liberties and property rights of citizens cannot be upheld unless it has a real relation to its object and the regulation reasonably adapted to accomplish the end sought to be attained. Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60. Whether the act is open to that objection need not be determined, but it is clear that in its operation it is unequal and obviously discriminatory. Here we have an act which in its operation permits publishers on one side of the state line to contract for advertising articles of commerce, but prohibits publishers on the other side of the state line from making like contracts. We think it offends the constitutional provision that 'the citizens of each state shall be entitled to all privileges and immunities of citizens of the several states.' Section 2, art. 4, federal Constitution. It is obnoxious also to the due process clause of the Fourteenth Amendment of that Constitution and to the other clause that no state shall deny any person within its jurisdiction the equal protection of the law."

For the same, if not for stronger reasons should the act here be held an infringement on such constitutional rights and as being discriminatory, since the act forbids a particular, proper, and lawful method or medium of advertising of a lawful business and of a lawful article of trade, while permitting the same kind of advertisement in newspapers, magazines, and periodicals, and by the same method or medium of billboard advertising permitting all kinds of advertisements of all other kinds of articles or commodities of merchandise or commerce, thereby withholding and denying rights and privileges of citizens of the state which are granted to other citizens both within and outside the state, and denying to citizens within the jurisdiction of the state equal protection of the law.

Thus, since tobacco has not been outlawed, and to engage in buying and selling it is a lawful business, and since advertisement thereof is a necessary incident thereto, an act, preventing advertisement of tobacco by a particular and lawful method or medium, not itself obnoxious or harmful, while permitting advertisements of all other articles of merchandise by the same method, and permitting tobacco in all its forms to be advertised by all other methods, except by billboards, etc., is an unreasonable and arbitrary exercise of the police power, creates an unwarranted discrimination, abridges the right to contract concerning a lawful business and the right to acquire, possess, and enjoy property, in effect amounts to a deprivation of property without due process of law, and is a denial of the equal protection of the law and of privileges and immunities of citizens safeguarded and protected by constitutional provisions.

I think the judgment of the court below should therefore be affirmed.


ELIAS HANSEN, J.

I concur in the views expressed by Mr. Justice STRAUP in his dissenting opinion.